IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**CHRISTOPHER C. DIGGS**                          **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO. 1:15CV186-SA-DAS**

**THE BURLINGTON NORTHERN AND**
**SANTA FE RAILWAY COMPANY**                      **DEFENDANT**

## REBUTTAL TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

To avoid summary judgment, Plaintiff Christopher Diggs must specify admissible evidence from which a reasonable jury might find that his race or disability—and not his delinquent submission of requested medical information—was why BNSF Railway Company took so long to return him to work. But his response to BNSF's summary judgment motion fails to identify <u>any</u> employee treated more favorably by the decision-maker, Dr. Laura Gillis, under substantially similar circumstances or to respond with more than conclusory assertions to BNSF's argument that he lacks any admissible evidence of discrimination. Mr. Diggs has failed to identify material facts that would allow him to make out a prima facie case of race or disability discrimination against BNSF, much less to rebut the legitimate safety-related reason BNSF has articulated for its standard return-to-work review of Mr. Diggs' records. There is no dispute that when he submitted complete records, Dr. Gillis approved his request to return to work. There is no evidence that she would not have made the same decision earlier if he had submitted those records. Accordingly, summary judgment dismissing his claims is warranted and should be entered.

## FACTS

As discussed fully in BNSF's Memorandum Supporting Defense Summary Judgment Motion ("Memorandum"), Mr. Diggs is a BNSF train-service employee who claims BNSF

205796.1

unlawfully delayed his return to work from a years-long medical leave because of his race and disability, in violation of Title VII, 42 U.S.C. § 1981, and the Americans with Disabilities Act. Following standard practice for BNSF's Medical and Environmental Health Department ("Medical Department"), because Mr. Diggs had been out on leave for over a year, BNSF's evaluating physician, Dr. Gillis, required him to provide medical records underlying his treating physicians' opinions so that she could review them and determine whether he was fit to return to his physically rigorous and safety-sensitive job. Mr. Diggs claims that Dr. Gillis discriminated against him by not simply deferring to his physicians' fitness opinions.

The "Facts" sections of Mr. Diggs' response and supporting brief are consumed in part by allegations unrelated to Dr. Gillis, the Medical Department, or the decisions Mr. Diggs purportedly challenges. They discuss alleged racial harassment by anonymous BNSF employees, all of which is alleged to have occurred in and around Amory years prior to Dr. Gillis' 2013 arrival two states away at BNSF's Fort Worth office.[1] They also detail alleged statistical representation of African Americans at the Amory facility.

Mr. Diggs does not dispute that he took medical leave from BNSF in 2009 because of disabling foot injuries; that he repeatedly claimed to be totally disabled during his leave; that he applied to return to work at BNSF in 2014 only after an absence exceeding five years; that he was being treated for diabetes, myopathy and continuing chronic foot problems at the time he applied to return; that he received requests from BNSF's Medical Department for records from the physicians treating him for those conditions; that he did not provide all information

---

[1] Mr. Diggs settled a race-discrimination lawsuit against BNSF in 2001, releasing the company from "any and all actions, causes of action, claims, demands, damages, losses, compensation, and liability of any and every kind and character whatsoever which the undersigned may now have or hereafter accrue on account of or in any way growing out of or connected with alleged acts of discrimination and harassment during Chris Diggs' employment with BNSF." *See* Release, Rebuttal Exhibit 1 (redacted to exclude settlement amount per agreement's confidentiality terms); *see also* Diggs Deposition Excerpts, Rebuttal Exhibit 2, 73:2-10.

requested by BNSF until 2016; or that Dr. Gillis approved his return to work on September 12, 2016[2] after receiving complete responses to her requests.  Mr. Diggs does not and cannot dispute that Dr. Gillis would have approved his return to work earlier if he had submitted the requested materials earlier.

## SUMMARY-JUDGMENT STANDARD

Like the factual background of this matter, the well-known summary-judgment standard of Rule 56—allowing for dismissal of claims not supported by "a genuine issue of material fact"—is discussed in detail in BNSF's Memorandum.  However, BNSF reiterates here the requirements for a non-movant to defeat a properly supported motion for summary judgment.  It is the responsibility of the Plaintiff to demonstrate a genuinely disputed issue of material fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *Turner v. Aurora Australis Lodge*, 2014 U.S. Dist. LEXIS 127961, at *7-*8 (N.D. Miss. 2014) (Aycock, J.) ("[I]t is not the Court's duty to sift through the record to find evidence to support her opposition to summary judgment.").  And, as the United States Supreme Court has held, the existence of factual disputes will only preclude summary judgment if there are *genuine* issues of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986) (finding that the summary judgment standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis added).  Thus, "[f]actual disputes that are irrelevant or unnecessary will not be counted" in deciding whether affidavits, discovery responses, and deposition testimony create a genuine issue of material fact.  *Id.* at 248.

---

[2] Mr. Diggs' Response claims that he is "currently in the process of attempting to finally return to work." In fact, he returned to active duty at BNSF's Amory facility in October 2016.

**ARGUMENT**

Obligated to identify competent direct or indirect evidence of race or disability discrimination in response to BNSF's summary judgment motion, Mr. Diggs fails entirely. To BNSF's argument that he lacks direct evidence of race or disability discrimination, he responds only with conclusory disagreement. The absence of any comparator to support an indirect, prima facie case of either kind of discrimination, meanwhile, remains as conspicuous as before Mr. Diggs filed his response. Finally, Mr. Diggs identifies no material fact supporting a conclusion that Dr. Gillis delayed his return-to-work approval for any reason other than that he delayed submitting the medical information that she requested.[3]

**I. Mr. Diggs has no direct evidence of race or disability discrimination.**

As pointed out in BNSF's Memorandum, Mr. Diggs may prove race or disability discrimination with "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). To amount to such "direct" evidence in the Fifth Circuit under either ADA or Title VII, alleged statements must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the adverse employment action; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764-765 (5th Cir. 2016). And even direct evidence is incompetent for summary-judgment purposes if it is inadmissible hearsay. *See Fairchild*, 815 F.3d at 965-967; *Harris*, 635 F.3d at 692 ("Hearsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment").

---

[3] A railroad employer has a duty to take reasonable care not to subject employees to injurious work conditions. Mr. Diggs litigated exactly that claim against BNSF during his 2009-2014 leave. *See* FELA Complaint, Motion Exhibit 3. Had Dr. Gillis not taken reasonable care to assure herself of Mr. Diggs' recovery, his re-injury might have given Mr. Diggs a better, second shot at such a recovery from BNSF. The Court should not facilitate such whipsaw litigation tactics.

Mr. Diggs cites no "direct evidence" other than 1) alleged statements from BNSF employee Isiah Waller to Mr. Diggs that unspecified BNSF employees did not want him to return to work and 2) alleged statements communicating the same to Mr. Waller from BNSF employees Carter Tuggle and Benjamin Gillam. As set forth fully in BNSF's Memorandum, these statements aren't "direct evidence" of discriminatory animus for multiple reasons: (1) because inference or presumption is required to discern any animus in them; (2) because none related to the subject decision to require Mr. Diggs to submit requested medical information before returning to work; and (3) because no summary-judgment evidence contradicts Dr. Gillis' status as the only BNSF employee with authority to make that decision.

In response, Mr. Diggs simply asserts without explaining that the alleged statements are "direct evidence of race discrimination" and "Waller, Tuggle and Gillam are managers for Defendant, discussing matters in the course and scope of their employment; thus their statements are not hearsay." As is well-settled, though, a summary judgment non-movant "cannot rely upon conclusory allegations, speculation, and unsubstantiated assertions to satisfy his burden." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). An issue is "deemed abandoned" if supported only by "conclusory allegations and statements." *Williams v. Martin*, 570 F. App'x 361, 363 (5th Cir. 2014). Presenting only bare conclusions in response to BNSF's argument that he has no direct evidence, Mr. Diggs' response creates no triable fact issue regarding direct evidence.

**II.     Mr. Diggs' response fails to identify a comparator Dr. Gillis treated more favorably under substantially similar circumstances and thus fails to demonstrate a viable case of either race or disability discrimination with indirect evidence.**

To state a prima facie case of disparate treatment with indirect evidence under either the ADA or Title VII, Mr. Diggs was required to show that (1) he is a member of a protected class;

(2) he is otherwise qualified for his job; (3) BNSF took some adverse action against him; and (4) he was treated less favorably than a similarly situated comparator from outside his protected class.[4] *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (regarding ADA claims); *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (regarding Title VII race-discrimination claims); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995) (finding ADA claims subject to the same method of proof as Title VII cases). For purposes of its summary-judgment motion, BNSF has assumed that Mr. Diggs could create a triable fact issue regarding (1), (2) and (3). But the lack of a triable fact issue regarding (4) is fatal to his claims. If Mr. Diggs "has not made such a showing" of a preferred comparator, he "has not established a prima facie case of racial discrimination under the Title VII[5] framework." *Turner*, 2014 U.S. Dist. LEXIS 127961, at *7; *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001) ("[T]o establish disparate treatment a plaintiff

---

[4] This test is part of the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A slightly different standard was articulated by the Fifth Circuit in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996):

> Thus, a jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [discrimination] was a determinative factor in the actions of which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

*Id.* at 994. Mr. Diggs' brief does not argue that this motion should be analyzed under *Rhodes* rather than *McDonnell Douglas*, and his claims could not survive summary judgment under either standard.

[5] Citing *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014), a failure-to-accommodate claim, Mr. Diggs argues that the Fifth Circuit has eliminated identification of a comparator as a prima facie element of ADA claims. But the Fifth Circuit has twice since that case required disability-discrimination plaintiffs to demonstrate that they were treated less favorably than similarly situated employees. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015); *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 234-35 (5th Cir. 2015). And, even if comparator evidence is not mandatory, some proof of discrimination is.

must show that the employer gave preferential treatment to another employee under nearly identical circumstances.") (internal alterations and quotation marks omitted).

But Mr. Diggs has neglected throughout this litigation to identify any valid comparator, and his response to BNSF's summary judgment motion does not address that deficiency. In arguing that Mr. Diggs has established a prima facie case under both ADA and Title VII, the response fails to mention any other BNSF employee that Dr. Gillis allegedly treated more favorably than Mr. Diggs under substantially similar circumstances. Elsewhere, the response names one other BNSF employee—John Eden Martin, a white male—who allegedly "was out three times on medical leave and did not have to provide his medical records, only a doctor's release to return to work." This brief description falls well short of establishing the "nearly identical" circumstances required for the Court to accept Mr. Martin as a comparator for Mr. Diggs. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). "Nearly identical circumstances" occur "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable [work] histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). For several reasons, such circumstances are missing here. First, the record establishes beyond dispute that Mr. Diggs' and Mr. Martin's employment statuses were determined by different BNSF officials—Dr. Gillis, the decision-maker in Mr. Diggs' case, has never made any decision relative to Mr. Martin's employment. *See* Gillis Affidavit, Motion Exhibit 17, at ¶17. Second, Mr. Diggs has presented no evidence to show that Mr. Martin's injury was as severe as his. Third, he acknowledges that Mr. Martin was "off work

for a few months," whereas had been off work for five years when he applied to return to work. *See* Complaint, at ¶6.[6]

In sum, Mr. Diggs' response fails to point to any proof that he and Mr. Martin were treated differently by the same decision-maker under substantially similar circumstances.[7] Consequently, it fails to present Mr. Martin—or anyone else—as a viable comparator in Mr. Diggs' discrimination claims. Absent a comparator, those claims are untenable. *Okoye*, 245 F.3d at 512-513.

### III. Mr. Diggs has failed to show that BNSF's stated reason for requiring a review of his medical records before he returned to work was a cover for unlawful discrimination.

What is the evidence that Dr. Gillis requested the records in question because of bias against Mr. Diggs' race or disability? No compelling answer is specified in the response. Because that is the legitimate reason BNSF proffers for the time it took to reinstate Mr. Diggs, there is no proof of pretext.

In support of his claim that there are material fact issues regarding whether BNSF's stated reason is a pretext, Mr. Diggs points to 12 averments dubbed "evidence" but

---

[6] As Dr. Gillis explained in undisputed testimony, the length of an employee's absence necessarily influences the nature of the return-to-work review. *See* Gillis Declaration, Motion Exhibit 17; Gillis Deposition Excerpts, Motion Exhibit 45, at 16:2-20. It's "standard practice" for the Medical Department to require employees out for more than a year to complete a medical questionnaire. *See* Motion Exhibit 45, at 16:2-20. Mr. Diggs doesn't point to any evidence that any of Mr. Martin's leaves were more than a year, such that he would have been required to complete a medical questionnaire. To the contrary, according to Mr. Martin's testimony, he never has. *See* Excerpts from Deposition Transcript of John Eden Martin, Rebuttal Exhibit 3, at 11:9-20 (recalling a leave of 10 months in 1993 and subsequent leaves of "six weeks maybe" and "six weeks to two months.")

[7] Mr. Diggs also supports his claims by citing testimony that BNSF employees Tim Grubbs and Isiah Waller were not aware of another employee who had to submit medical records before returning to work. But this 1) still fails to identify a comparator and 2) is illogical if offered as proof that there were no other such employees. "As the saying goes, the absence of evidence does not equal evidence of absence." *Johnson v. PPI Tech. Servs., L.P.*, 613 F. App'x 309, 312 (5th Cir. 2015).

unaccompanied by the required Rule 56(c) record citations. Only five relate to material fact issues:

- "In 2014, Diggs was released to return to work by all three of his doctors, without restrictions, but BNSF would not allow him to return to work. Instead, it made him jump through one hoop after another for the next two years, trying to frustrate him so he would give up."

- "Diggs' supervisor, Waller, told him, that Gillam and Tuggle did not want him to return because he was black. Gillam and Tuggle admitted they spoke to Waller about Diggs' returning to work. Gillam admitted he discussed Diggs' medical issues with Dr. Gillis. A reasonable jury could conclude that Tuggle and Gillam were working with Dr. Gillis to make sure Diggs was not allowed to return to work."

- "Isiah Waller was not aware of any other employees who had been out on medical leave and released by their doctor, who were not allowed to return to work."

- "Tim Grubbs was not aware of any other employee having to jump through so many hoops to return to work from medical leave."

- "John Eden Martin was out three times on medical leave and did not have to provide his medical records, only a doctor's release to return to work."

The first of these statements amounts to a charge that it was unreasonable for BNSF and Dr. Gillis not to simply defer to the opinions of Mr. Diggs' physicians, but instead to request medical information from those physicians in order to determine independently whether Mr. Diggs was fit to return to his job at BNSF. The Fifth Circuit has previously rejected a claim that such a medical document request from an employer masks discrimination. *See Jefferson v. MillerCoors, L.L.C.*, 440 F. App'x 326, 330-31 (5th Cir. 2011). In this case, Mr. Diggs hasn't adduced evidence that anyone else was similarly situated to him medically, much less that such a comparator was treated more favorably by Dr. Gillis. He has not adduced evidence that Dr. Gillis' records requests were medically unreasonable. And he has not adduced evidence that she

made those requests because of bias against his race or disability.[8] This is simply insufficient to create a factual dispute about the reason that motivated Dr. Gillis: the need to ascertain that an employee who had repeatedly claimed total disability during a five-year absence from work was able to return to a physically demanding and safety-sensitive job. *See* Gillis Deposition Excerpts, Motion Exhibit 45, at 31:16-35:8

For reasons already addressed, the other listed statements are similarly insufficient to avoid summary judgment. The second, alleging conversations between Gillam, Tuggle and Waller, relies upon hearsay evidence that is incompetent summary-judgment proof. Even if this evidence were admissible (and it is not), it falls well short of what would permit a reasonable jury to conclude that Dr. Gillis was influenced by another with illicit motives.[9] To create a factual dispute on that issue, a plaintiff "must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson v. Alltel Information Systems*, 373 F.3d 647, 653 (5th Cir. 2004). Mr. Diggs can make neither showing. First, the record is empty of evidence that Mr. Gillam or Mr. Tuggle harbored race- or disability-based "discriminatory animus" against Mr. Diggs, and the response cites none. Indeed, Mr. Waller—the source of this hearsay—has at no time testified that Mr. Gillam or Mr. Tuggle did not want Mr. Diggs to return to work because of his race or disability. Second, the

---

[8] Moreover, though Mr. Diggs has collected records and testimony from all of his treating physicians, none has opined that it was medically unreasonable for Dr. Gillis to request medical information regarding their conclusions about Mr. Diggs. That Mr. Diggs' physicians thought he was fit to return to work in 2014 does not create a fact issue regarding whether Dr. Gillis may have had unlawful motives for asking to see the records underlying their determinations.

[9] It also concedes the lack of any evidence that Dr. Gillis had improper motives or even knew of Mr. Diggs' race. "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any [discriminatory or] retaliatory animus." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

notion that Mr. Tuggle or Mr. Gillam "possessed leverage, or exerted influence, over" Dr. Gillis is rejected by Dr. Gillis' uncontested affidavit. Mr. Diggs' response fails to rebut this meaningfully, stating only that "Gillam admitted he discussed medical issues with Dr. Gillis."[10] The Court is left to guess the content of those conversations. It cannot permit a jury to do likewise.

The third and fourth statements listed in the Response establish nothing other than that two BNSF employees in Amory didn't know of another BNSF employee who was similarly situated to Mr. Diggs. . Finally, for the reasons set forth in § II, *supra*, among them that he never submitted a return-to-work application to Dr. Gillis, Mr. Martin is not a valid comparator.

## CONCLUSION

This race and disability discrimination suit solely contests the time it took BNSF's occupational medicine expert to approve Mr. Diggs' request to return to active duty. Mr. Diggs may only avoid summary judgment by pointing to admissible proof creating material factual disputes concerning whether Dr. Gillis unlawfully discriminated against him under the ADA or Title VII. But he has failed to specify any direct evidence of race or disability discrimination or to supply an essential element of an indirect-evidence case by identifying a comparator who received more favorable treatment from Dr. Gillis than he did. It's undisputed that Dr. Gillis approved Mr. Diggs' return-to-work request in September 2016 shortly after he submitted all the medical records she requested. Mr. Diggs offers no medical opinion that her records requests were medically needless. Mr. Diggs offers no evidence that she made those requests due to bias

---

[10] This is false even for the scant information it provides. Mr. Gillam did not "admit" discussing Mr. Diggs' "medical issues" with Dr. Gillam. At his deposition, Mr. Gillam explicitly testified that he could not recall the substance of any conversations he might have had with Dr. Gillis about Mr. Diggs. *See* Gillam Deposition Excerpts, Rebuttal Exhibit 4, at 8:3-16.

against his race or his particular conditions. His admitted delay in satisfying her requests is the only evidence explaining delay of the approval. There is no race or disability case to try.

Respectfully submitted, this 13th day of December, 2016.

                              BNSF RAILWAY COMPANY

                              BY:   */s/ Benjamin Bryant*
                                        BENJAMIN BRYANT

R. Pepper Crutcher, Jr. (7921)
Benjamin Bryant (103623)
BALCH & BINGHAM LLP
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
E-mail: pcrutcher@balch.com
E-mail: bbryant@balch.com

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that on December 13, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following counsel of record:

>Jim Waide
>Ron Woodruff
>Waide & Associates, PA
>P. O. Box 1357
>Tupelo, MS  38802-1357
>Telephone:  662-842-7324
>Telecopier:  662-842-8056
>E-mail:  waide@waidelaw.com
>E-mail:  rlw@waidelaw.com
>
>W. Christopher Harrison, Esq.
>Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
>6410 Poplar Avenue, Suite 300
>Memphis, TN  38119-4867
>E-mail:  chris.harrison@ogletreedeakins.com

>*/s/ Benjamin Bryant*
>BENJAMIN BRYANT