IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTOPHER C. DIGGS                                                           PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:15CV186-SA-DAS

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY                                                    DEFENDANT

MEMORANDUM OPINION

Christopher Diggs filed his Complaint [1] in this Court on November 4, 2015 against his former employer, The Burlington Northern and Santa Fe Railway Company ("BNSF"). This matter is presently before the Court upon Defendant's Motion for Summary Judgment [66]. Diggs has answered [72] and BNSF replied [74], making this motion ripe for review.

*Factual and Procedural Background*

Christopher Diggs was hired by BNSF in 1992, first as a brakeman and later as a conductor. According to Diggs, he was subjected to racial harassment by other BNSF employees over the years. Regarding this harassment, Diggs filed a race discrimination lawsuit against BNSF in 2000. He settled his claim in 2001, and this Court dismissed his case with prejudice. *See Diggs v. The Burlington Northern and Santa Fe Railway Company*, Civil Action No.: 1:00-cv-001-D-D (N.D. Miss. April 27, 2001).

In 2009, Diggs took off work from BNSF because of health issues related to his foot. Around this time, he was diagnosed with diabetes, as well. Because of complications arising from his foot and his other health problems, Diggs was off work for several years. Diggs had an operation on his foot, but still he could not return to his current position, which required standing for long periods. His podiatrist, Dr. Boles, advised further surgery only as a last option because of its potential risks and recommended he take a sedentary job. Thereafter, Diggs took a BNSF

exam for a job that was more sedentary but failed twice. Then, in 2013, he was diagnosed with an autoimmune myonecrosis, also known as myositis. This illness causes pain, inflammation, and weakness, and the doctor treating him for this illness, Dr. Housley, recommended a sedentary job as well. However, treatment for this illness was effective immediately, and Diggs reported feeling normal. Furthermore, in June 2014, Diggs had a second surgery on his foot that corrected his remaining issues. After his surgery, Diggs was released to work with no restrictions by Dr. Boles, and Dr. Housley similarly released him for work in August of 2014.

After an absence of over five years, Diggs asked to return to his job at BNSF. Diggs provided documentation of his recovery to his division train master, Isiah Waller. Waller forwarded the information to the supervisor, Carter Tuggle, and BNSF's medical staffer, Ben Gillam. In response, BNSF sent Diggs a form letter, asking him to complete a fitness for duty questionnaire. Also, Dr. Laura Gillis, BNSF's medical director, asked Diggs to provide further information from his doctors regarding symptoms, treatment, medication side effects and recommended activity restrictions. Further, because Diggs had been diagnosed with diabetes, Gillis asked that he fill out an enclosed medical status form regarding his treatment for diabetes.

Each of Diggs' doctors attempted to send the required information to Dr. Gillis. Dr. Housely and his staff sent records regarding his myonecrosis to BNSF on July 22, November 22, and again on December 11, of 2014. Dr. Glasgow, who was treating Diggs' diabetes, similarly filled out multiple medical releases, the first dated October 16, 2014. Again, BSNF deemed Diggs' information incomplete, so Dr. Glasgow sent another form to BNSF on April 21, 2015. Next, Dr. Boles sent BNSF a release as to Diggs' foot injury on August 4, 2014, releasing him to work without restriction. Because of similar inadequacies, he sent another letter on November 2,

2014. However, on December 8, 2014, Dr. Gillis explained to Diggs that she had received completed records from Dr. Boles, but had somehow received nothing from the other doctors.

Diggs was unable to complete his medical file until two years later. BNSF explains that though the doctors were sending documents, Dr. Gillis found their documentation incomplete. For example, she found that one letter referred to "enclosed visit notes," but the doctor had failed to enclose the referenced notes. In any event, on September 9, 2016, Diggs provided the final missing documents to Gillis, and he was released for full-duty work on September 12. However, Diggs complains that Dr. Gillis intentionally prolonged his return to work for two years without legitimate reason. During his five year leave, he remained employed by BNSF, but he was placed on "vocational rehabilitation" status. Dr. Gillis reports that she requested Diggs' medical records pursuant to normal practice for the Medical Department in such scenarios.

Thereafter, Diggs brought this claim of race discrimination under Title VII and disability discrimination under the ADA. He argues that management at BNSF did not want him to return to work at all, both because he is African American, and because he had been temporarily disabled.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Plaintiff has alleged that BNSF management did not allow him to return to work for two years after his doctors had cleared him to work because he is African American, and because of his disability.

To succeed on a claim for racial discrimination under Title VII or disability discrimination under the ADA, a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If a plaintiff establishes a presumption of discrimination by

presenting a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and a plaintiff asserting discrimination must establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); see also *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (concluding that the ADA does not require "sole causation," and that the proper causation standard under the ADA is a "motivating factor" test.)

*Title VII Discrimination*

Plaintiff intends to show a *prima facie* case of race discrimination with direct evidence. Plaintiff presents deposition testimony of Isiah Waller, an African American man who was the division train master. Waller held a supervisor role reporting directly to Carter Tuggle, who was the superintendent for the division.[1] During depositions, Waller was asked why there were so few black employees working at the Amory terminal, and he reported, "I consider the South, and it's harder to get hired on here as a black person." In reference to whether African Americans were being discriminated against at BNSF, specifically, he responded, "[t]hey're not hiring them,

---

[1] Waller stepped down from his position July 31, 2016.

5

I guess you could say . . . I was going to hire some blacks because I would have been the one hiring them . . ." He also testified that he was the last African American person who was hired on at BNSF's Amory terminal, nineteen years ago.

Furthermore, Plaintiff recalls conversations with Waller where the two discussed Plaintiff's return. After hearing that Plaintiff's return had not been approved, Waller allegedly told Plaintiff that BNSF refused to allow Plaintiff to return to active duty because he is African American and because of his injuries. He purportedly told Plaintiff that white employees who were off on medical leave did not have to jump through the same hoops that he had to in order to return to work. Though Plaintiff recalls this conversation, Waller stated in his deposition that he was unsure of the details, saying "we might have talked about that." Waller did remember that Plaintiff's situation caused him to feel skeptical, because he thought management might be concerned that Plaintiff would get injured again. He later recalled that Carter Tuggle was one of the managers causing his concern, but he also said that no one explicitly said "we ain't going to let [Mr. Diggs] come back to work."

Plaintiff also provides "background evidence" that he intends to use to demonstrate that the Amory depot has a history and culture of race discrimination. Plaintiff alleges that he encountered significant harassment from fellow employees that went unpunished in the years leading up to his previous lawsuit against BNSF.

In addition to arguing that many of Waller's statements and Plaintiff's recitation of Waller's statements are inadmissible hearsay,[2] Defendant argues that the comments do not constitute direct evidence. Furthermore, they argue that Plaintiff's evidence is irrelevant because

---

[2] To the extent that Waller's testimony contains statements that constitute hearsay, the Court does not consider such statements in reaching its conclusions on the motions for summary judgment. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (citing *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992)).

Dr. Gillis, who is the relevant decision maker, began her employment much later, in 2013. Finally, Defendant argues that Waller's statements constitute stray remarks.

"To qualify as direct evidence of discrimination, workplace comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citing *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (alterations in original)) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown v. E. Mississippi Elec. Power Ass'n*, 989 F. 2d 858, 861 (5th Cir. 1993).

In the case at bar, neither Waller nor his supervisors were responsible for reviewing medical information to determine whether an employee was safe to return to work. In order to consider the alleged conversations that Waller had with management as direct evidence, the trier of fact would have to infer that management and Dr. Gillis were co-conspirators in the decision to keep Plaintiff from returning. This inference would be improper under this standard. Therefore, Plaintiff must make his *prima facie* case using the *McDonnell-Douglas* framework for circumstantial evidence.

To establish a *prima facie* case for race discrimination with circumstantial evidence, plaintiff may show that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside of the protected class or that similarly situated employees of a different race were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Defendant takes issue with the last factor, alleging that because Plaintiff was neither replaced by someone

outside of the protected class nor treated worse than a specific comparator who is outside his protected class, his claim fails. Though he fails to allege that a specific comparator was treated more favorably in the *prima facie* context,[3] Plaintiff elsewhere points to John Eden Martin and Timothy Grubbs, who are white, as examples of unfair treatment. They have taken medical leave in the past, but unlike Plaintiff, BNSF allegedly allowed them to return to work without having to deal with the same barriers as Plaintiff. Martin was not required to provide his medical records, and he does not remember completing the medical questionnaire. Grubbs stated that he had never heard of other employees having to fill out a medical questionnaire.

"Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Furthermore, if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Id.* at 260 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

Martin's deposition testimony shows that he was injured first in 1993, when he was off for around ten months. The next two times he took off work for about six weeks to two months, each. Grubbs stated that he was off work for six weeks for back surgery at least ten years ago.

---

[3] Plaintiff posits that the language originally articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green* is applicable. There, the *prima facie* standard was articulated as such: Plaintiff must show that he is a member of a protected class who applied for and was qualified for a job for which the employer was seeking applicants, and despite his qualifications was rejected. After rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. 1817. However, though the two are substantially similar and lead to the same conclusions, the Court finds that the "adverse employment action" terminology to be applicable to Plaintiff's complaint, because BNSF did not fail to hire Plaintiff or reject his application, but rather allegedly treated him unfairly because of his race and disability. Regardless, Plaintiff must show unfair treatment relative to those outside his protected class.

Conversely, Plaintiff was returning to work after medical complications had caused him to take five years of disability leave, instead of weeks or months. Dr. Gillis explained in her deposition that there is no certain amount of time that an employee is out whereby they become required to submit more comprehensive medical recordation upon return. However if an employee has been out for longer than one year, the standard practice is to require employees to complete a questionnaire. Also, she began her employment in June 2013, quite after Martin and Grubbs had their medical leave.

Clearly, not only were the comparator's incidents too remote in time from Plaintiff's incident, they were handled by a different decision maker, and they were much less severe. Furthermore, the difference in Plaintiff's ailments distinguishes Plaintiff from Martin and Grubbs. Thus they are not sufficiently similarly situated as to present a *prima facie* case of discrimination.

Even if Plaintiff could establish a *prima facie* case of race discrimination, he cannot overcome his burden to show that the Defendant's nondiscriminatory reasons for their adverse employment decision were a mere pretext for discrimination. Defendant argues that it did not timely receive Plaintiff's completed medical files, and the notes that they did receive were incomplete. Additionally, Defendant argues that the comprehensive approach regarding Plaintiff's medical file was merely a consequence of Plaintiff's extended leave, and not a consequence of his race. Thus they have satisfied their burden of production to show legitimate reasons for the adverse decision.

Plaintiff counters that Defendant's explanation is merely a pretext for discrimination. However, in contrast to the minimal burden that a plaintiff bears when establishing his *prima facie* case, a plaintiff must produce "substantial evidence of pretext." *Auguster*, 249 F.3d at 402–

9

03. Other than the evidence barred by hearsay, Plaintiff's only evidence of pretext fails to show causation, or that the adverse action was taken because of Plaintiff's race. He argues that he was released by his doctors but not allowed to come back to work, that Waller had never heard about other employees having to struggle to come back to work as he did, and that Grubbs and Martin did not have to complete medical questionnaires. Plaintiff also points to Waller's statements, and he argues that no one ever explained vocational rehab to him.

Waller's stray remarks do not provide substantial evidence that Defendant's explanation is unworthy of credence. *See Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (*citing Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) ("The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker).

Plaintiff's remaining evidence merely shows that Plaintiff did not agree with Dr. Gillis' decision, and that Plaintiff's peers were unaware of procedure mandated in situations different than their own, not that defendant discriminated against him. Therefore, Plaintiff's case fails as a matter of law. *See Little v. Republic Refining Co., Ltd*., 924 F.2d 93, 97 (5th Cir. 1991) ("[A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence"); *see also Reeves*, 530 U.S. at 148, 120 S. Ct. 2097 (*citing Aka v. Washington Hospital Center,* 156 F.3d. 1284, 1291–1292 (D.C. Cir. 1998)) ("An employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason

was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred).

The Court also notes that much of Plaintiff's evidence is derived from harassment occurring before and resulting in his previous suit, which was adjudicated on the merits. *See In re W. Tex. Mktg. Corp.,* 12 F.3d 497, 500 (5th Cir.1994) ("[T]his [C]ourt has long recognized that a consent judgment is a judgment on the merits, and is normally given the finality accorded under the rules of claim preclusion" (internal quotation marks and citations omitted)). Though res judicata was not fully briefed by the parties, the Court finds that Plaintiff's claim fails to establish a sufficient question of material fact as to pretext, especially given the likely inability for Plaintiff to present facts regarding harassment occurring before 2001 due to res judicata concerns.[4] Therefore, Plaintiff's claim of racial discrimination under Title VII fails for multiple reasons.

*Discrimination under the ADA*

Plaintiff also brings a claim of disability discrimination, alleging an adverse employment action occurred when Defendant prolonged his return to work. He argues that Waller's comments constitute direct evidence of race discrimination as well as direct evidence of discrimination based on disability. However, his argument regarding direct evidence fails here for the same reason stated previously. In order to view Waller's comments as direct evidence of disability discrimination, the Court must make an improper inference to conclude Waller had any effect on the adverse decision.

---

[4] Defendant asserted its res judicata argument in its Motion in Limine [85]. Where Plaintiff's claim is derived from a "nucleus of operative facts" relevant to his previous suit before this Court, his claim is likely barred by res judicata. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Application by the court *sua sponte* of res judicata principles is permissible in the interest of judicial economy where both actions were brought before the same court. *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 469 (5th Cir. 2013) (*citing Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980)).

Therefore, Plaintiff must make his *prima facie* case using circumstantial evidence. The parties disagree over the elements necessary to establish a *prima facie* case of disability discrimination. Defendant has insisted that Plaintiff must allege a specific similarly situated comparator from outside his protected class, and that because he has not, his claim must fail. However, the Fifth Circuit has explicitly embraced Plaintiff's argument. "To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999) (citing, *inter alia, Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998) (per curiam), and *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 36 (5th Cir. 1996)); *see also Chiari v. City of League City*, 920 F.2d 311 (5th Cir. 1991) (interpreting the Rehabilitation Act of 1973, 29 U.S.C.A. § 794(a), the ADA's predecessor). Requiring a fourth element "requires Plaintiffs to prove causation twice." *See LHC Grp., Inc.*, 773 F.3d at 696 (holding that, pursuant to the Fifth Circuit's rule of orderliness, subsequent panels were and are bound by *Chiari v. City of League City*, which only required a three part *prima facie* case in ADA claims).

Though they use different frameworks to present their arguments, the parties generally agree that Plaintiff has satisfied the first two elements of the *prima facie* case, but dispute whether Plaintiff was subject to an adverse employment decision *on account of his disability*. Additionally, Plaintiff alleges that, because Defendant is incorrect regarding the *prima facie* case required, Defendant has conceded that Plaintiff has made his prima face case based on disability discrimination. Therefore, he does not argue the last factor. The Court disagrees.

Indeed, Plaintiff suffered an adverse employment decision when Defendant did not allow him to return to work. However, even though identifying a specific comparator may not be

required, Plaintiff failed to carry his *prima facie* burden when he failed to argue that this decision was *because of* his disability. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 1866, 52 L. Ed. 2d 396 (1977).

However, in the interest of justice, the Court has examined the evidence presented throughout the pleadings to determine if Plaintiff has a viable claim. Though not specifically asserted to allege a *prima facie* case of disability discrimination, Plaintiff has presented evidence that may be significant for his race-based claims as well as his disability claims. He alleges that Defendant disallowed him to return for two years after his doctors released him. Furthermore, Plaintiff elsewhere pointed to Waller's purported comments that management did not allow him to return to work because of his race and injuries. Unfortunately, Plaintiff is unable to substantiate his assertion that other non-disabled employees were permitted to forego similarly extensive medical review under Dr. Gillis' authority with any recent comparators. Next, Waller's comments constitute stray remarks and hearsay that, standing alone, are insufficient to defeat summary judgment. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). Neither of these assertions creates a presumption of discrimination under the *prima facie* precedent.

In any event, Defendant argues that Plaintiff's assertions do not show discriminatory motive. Dr. Gillis testified that employees on leave for longer than one year were required to undergo rigorous medical analysis to ensure a safe return, and employees with diabetes were required to fill out a specific medical status form. Given the safety concerns inherent with railroad work, Defendant alleges that this was a reasonable requirement. Defendant argues that it

should not be held accountable for Plaintiff's failure to submit the required forms. Thus Defendant produced a legitimate, nondiscriminatory reason for the adverse employment action.

Once a legitimate reason for the adverse decision is produced, the burden shifts back to Plaintiff to offer sufficient evidence to create a genuine issue of material fact either that the Defendant's reason is not true or that disability was at least a motivating factor in Defendant's adverse employment decision. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d at 702 (citing *Rachid*, 376 F.3d at 312 (citations and internal quotation marks omitted). Even if Plaintiff had established a *prima facie* case of disability discrimination, he has not put forth evidence to create a genuine issue of material fact as to Defendant's discriminatory motive. Diggs does not dispute the fact that he did not timely complete his medical file; he merely found the requirements excessive and unexplained. Ultimately, Plaintiff failed to allege causation at all—that Defendant disallowed his return *on account* of his disability—and there are no facts elsewhere in the record that show such causation. Therefore, as Plaintiff failed to show a similarly situated comparator and failed to take any other route to prove causation beyond that which is barred by hearsay, he has not established that disability was a motivating factor when Defendants made their adverse employment decision of prolonging his return.

## *Conclusion*

Plaintiff has not created a genuine issue of material fact regarding his discrimination claims. Therefore, Plaintiff's claims for discrimination under Title VII and the ADA are hereby DISMISSED. Defendant's Motion for Summary Judgment is GRANTED. CASE CLOSED.

IT IS SO ORDERED this the 20th day of April 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE